## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES TALBERT,                     :

      Plaintiff            :     CIVIL ACTION NO. 3:23-1338

v.                                   :        (JUDGE MANNION)

COMMONWEALTH OF                      :
PENNSYLVANIA, *et al.*,

                          :

      Defendants

## <u>MEMORANDUM</u>

Currently before the Court are several motions filed by *pro se* Plaintiff Charles Talbert ("Talbert") in this civil action in which he raises claims generally based on the lack of mental health treatment he has received while in state prison and his repeated placement in the Restricted Housing Unit ("RHU") after acting out, allegedly due to his mental health issues. Those motions include three (3) motions for preliminary injunctions, a motion for summary judgment, a motion for a default judgment, a motion seeking the undersigned's recusal or the transfer of this case to the Western District of Pennsylvania, and a motion to exceed the Local Rules' page limitation for his brief in support of the motion for recusal. In addition, one set of Defendants have filed a motion for an extension of time to file a response to Talbert's motion for summary judgment, and a motion to stay discovery in

this action until the Court resolves their pending motion to dismiss Talbert's operative complaint. For the reasons set forth below, the Court will (1) deem the first of Talbert's motions for a preliminary injunction withdrawn due to his failure to file a brief in support of the motion in accordance with the Local Rules, (2) deny his other two (2) motions for a preliminary injunction, (3) deny without prejudice his motion for summary judgment as premature, (4) deny his motion for a default judgment, (5) grant Talbert's motion to exceed the page limitations for his brief in support of his motion for recusal, (6) deny Talbert's motion for recusal or transfer of this action to the Western District, (7) deny as moot Defendants' motion for an extension of time to file a response to Talbert's motion for summary judgment, and (8) grant Defendants' motion to stay discovery pending resolution of their motion to dismiss.

## I.   BACKGROUND

### A.   Procedural History

*Pro se* Plaintiff Charles Talbert ("Talbert"), a prolific federal court litigant and convicted and sentenced state prisoner, commenced this action by filing a complaint against Josh Shapiro, the Governor of the Commonwealth of Pennsylvania, along with a separately docketed exhibit, in the United States District Court for the Eastern District of Pennsylvania on

- 2 -

June 14, 2023.[1] (Docs. 1, 2.) Talbert also filed a motion for a preliminary injunction (Doc. 4), which the Honorable Mark A. Kearney dismissed without prejudice via an Order issued on June 20, 2023 (Doc. 6).

Because Talbert was seeking "redress from a governmental entity or officer or employer of a governmental entity," 28 U.S.C. §1915A(a), Judge Kearney screened the complaint and issued a Memorandum and Order on July 14, 2023. (Docs. 11, 12.) In Judge Kearney's Memorandum, he described Talbert's allegations and legal claims in his complaint, as well as certain matters of public record relating to Talbert, as follows:

> Unnamed officers arrested Charles Talbert for an unidentified crime and detained him in an unidentified facility on January 8, 2019. An unnamed Philadelphia Court of Common Pleas judge "realized" Mr. Talbert suffered from serious mental illness about a year later. The judge ordered the Commonwealth

---

[1] It appears that Talbert has filed approximately eighty (80) non-habeas civil actions in the Eastern District, ten (10) non-habeas civil actions in this District, and three (3) non-habeas civil actions in the Western District. He also has more than "three strikes" for purposes of 28 U.S.C. §1915(g). *See, e.g.*, *Talbert v. Pa. State Corr. Officer, Assoc.*, Nos. 20-cv-1154, 20-cv-1902, 2021 WL 963454, at *1 (M.D. Pa. Mar. 15, 2021) ("Talbert has had three, or more, previously lawsuits which constitute 'three strikes' within the meaning of 28 U.S.C. §1915(g)."); *Talbert v. Commonwealth*, No. 458 M.D. 2023, 2025 WL 66511, at *1 n.1 (Pa. Commw. Ct. Jan. 10, 2025) (noting that "[c]ourts have labeled Talbert a serial litigant" and citing cases in support of notation); *see also Talbert v. Corr. Dental Assocs.*, No. 18-cv-5112, 2020 WL 5517455, at *2 (E.D. Pa. Sept. 14, 2020) (explaining that Talbert sought recusal of district judge because Talbert was identified as, *inter alia*, a "serial litigant," and denying recusal on this ground because "[h]e is, by Congress' definition [in 28 U.S.C. §1915], a serial litigant").

- 3 -

provide Mr. Talbert with mental health treatment and appropriate housing the same day.

But the Commonwealth instead has held Mr. Talbert in the restrictive housing unit in solitary confinement at unidentified facilities since January 13, 2020 because of his behaviors related to his mental health conditions. Mr. Talbert is not being treated for his mental health diagnoses while in solitary confinement.

### The Parole Board denies Mr. Talbert's access to parole hearings.

Mr. Talbert has accrued time in the restrictive housing unit while incarcerated at unnamed facilities lasting through 2032 "[d]ue to the symptoms of [his] mental health conditions[.]" Mr. Talbert claims he completed his minimum sentence eleven months ago in July 2022, but the Parole Board denied him a parole hearing because he is in the restrictive housing unit.

Mr. Talbert claims the Commonwealth's Parole Board has a process where it considers whether an incarcerated person will be eligible for parole after reaching a minimum sentence. But if an incarcerated person is placed in the restrictive housing unit, he will not be eligible for a Parole Board hearing. So Mr. Talbert's "maximum term" is now up in 2026 which is five years "beyond" his minimum sentence since the Parole Board is not holding a hearing for him in the restrictive housing unit. Mr. Talbert is "being forced to do the remainder of his sentence in isolation."

### The Governor ignores Mr. Talbert's prolonged isolation.

The Department of Justice at some unknown time informed the Commonwealth and its past and present governors through its investigative report the Department of Corrections keeps incarcerated persons with serious mental illness in prolonged isolated confinement. Governor Shapiro "[u]pon being elected into the office" at some unknown time "knowingly, intentionally, and in reckless disregard for the mental health of [incarcerated persons] in prolonged isolated confinement, failed to take any

reasonable, meaningful, [or] appropriate measure to cease, desist, and correct the [] unconstitutional practice."

Mr. Talbert claims Governor Shapiro "[t]hrough his chairmanship of the Executive Board" and "administrative and policy statements contained in Executive orders, or by Management and other Directives" establishes policies and practices for all employees and agencies under his jurisdiction. And the Department of Corrections "is an agency under [Governor Shapiro's] jurisdiction." So, because of the Department of Justice's investigation report on the unconstitutional practice along with "other Federal and International laws[,]" Governor Shapiro knew he had a duty to rectify the "unconstitutional practice of torturing inmates with serious mental health conditions, by taking reasonable measures to reform the manner in which they can be punished . . . for their behavior caused by [] mental health symptoms."

But instead Governor Shapiro "turned a blind eye" and "approved[ed] the [Commonwealth's] unconstitutional practice without any intent of correction." And Governor Shapiro failed to take reasonable measures to "cease, desist, and correct" the Commonwealth's practice of punishing incarcerated individuals' mental health behavior by isolating them instead of providing them court ordered treatment and housing, and he "recklessly" denied them parole. Mr. Talbert alleges Governor Shapiro's "acts and inactions" subjected him to unnecessary and wanton infliction of psychological pain and suffering; inflicted disproportionate punishment to the severity of his misdemeanor; affected his serious mental health needs; deprived him of his protected liberty interests without due process; deprived him equal access to parole hearings; and aggravated his preexisting hypertension.

. . .

Mr. Talbert pro se sues Governor Shapiro in his individual and official capacities and separately under a theory of supervisory liability. Mr. Talbert's Complaint, construed in the most liberal fashion without speculation, seemingly tries to plead

civil rights claims against Governor Shapiro for depriving him of his due process rights, his Eighth Amendment rights, and his right to equal protection. Mr. Talbert seeks more than $250,000.00, costs, punitive damages, fees, and injunctive relief.

(Doc. 11 at 2–4.)

After identifying these factual allegations and legal claims, Judge Kearney dismissed the complaint with prejudice in part, and without prejudice in part. (Doc. 12.) To the extent that Talbert asserted official-capacity claims for monetary damages against Governor Shapiro, Judge Kearney dismissed those claims with prejudice. (*Id.*) Insofar as Talbert asserted official-capacity claims for injunctive relief or individual-capacity claims for monetary damages against Governor Shapiro, Judge Kearney dismissed those claims without prejudice. (*Id.*) Judge Kearney also provided Talbert with leave until August 14, 2023, to file an amended complaint "pleading <u>facts</u> demonstrating the Governor's personal involvement or supervisory liability arising from [Talbert's] conditions of confinement." (*Id.*)

Prior to filing an amended complaint, Talbert filed his second motion for a preliminary injunction on July 26, 2023. (Doc. 14.) Judge Kearney denied this motion without prejudice through an Order entered on July 28, 2023. (Doc. 15.)

Talbert timely filed an amended complaint, along with a third motion for a preliminary injunction, on August 9, 2023. (Docs. 17, 18.) In the amended

- 6 -

complaint, Talbert names six (6) Defendants: (1) Governor Shapiro; (2) the Commonwealth of Pennsylvania (the "Commonwealth"); (3) the Commonwealth of Pennsylvania Department of Corrections (the "DOC"); (4) Laurel Harry ("Harry"), the Secretary of the DOC; (5) Centurion, a company providing mental health services to the DOC; and (6) Dr. Adam Gluskakow, a psychiatrist employed by Centurion.[2] (Doc. 17 at 2.)

On August 10, 2023, Judge Kearney issued an Order denying Talbert's motion for a preliminary injunction without prejudice to him refiling it after Judge Kearney screened the amended complaint under Section 1915A(a). (Doc. 19.) The next day, Judge Kearney entered an Order transferring the case here. (Doc. 20.)

On August 21, 2023, this Court issued an Order which, *inter alia*, directed the Clerk of Court to send waiver of service forms to Defendants. (Doc. 23.) Approximately twenty (20) days later, Talbert filed a "Motion to Renew Motion for Preliminary Injunction and Temporary Restraining Order." (Doc. 26.) Then, on September 18 and 19, 2023, Defendants Harry, the Commonwealth, the DOC, and Governor Shapiro (collectively, the "Commonwealth Defendants") waived service, and waiver of service forms

---

[2] The Court provides more details about Talbert's amended complaint *infra*.

sent to Dr. Glushakow and Centurion were returned unexecuted. (Docs. 27, 29, 30.)

On October 20, 2023, the Commonwealth Defendants filed a motion to dismiss Talbert's amended complaint (Doc. 34), and they filed a brief in support of their motion on October 25, 2023 (Doc. 35). Talbert responded to this motion on November 7, 2023, by filing not only a brief in opposition to it (Doc. 38), but also a motion for summary judgment and a brief in support of this motion (Docs. 36, 37). On November 9, 2023, the Commonwealth Defendants filed a motion for an extension of time to file a response to Talbert's motion for summary judgment (Doc. 39.) Talbert filed a brief in opposition to the Commonwealth Defendants' motion for an extension of time on December 1, 2023. (Doc. 41.)

Talbert filed another motion for a preliminary injunction and supporting brief on December 4, 2023. (Docs. 45, 46.) Four (4) days later, Talbert filed a motion for a default judgment as to Dr. Glushakow and Centurion. (Doc. 47.) The Commonwealth Defendants then filed a brief in opposition to Talbert's motion for a preliminary injunction on December 14, 2023. (Doc. 52.)

On December 20, 2023, Centurion and Dr. Glushakow (the "Medical Defendants") filed a notice of their intent to seek a judgment of non pros as

to any professional liability claims asserted against them. (Doc. 53.) Talbert filed a reply brief in opposition to this notice on January 8, 2024 (Doc. 54), and he filed a reply brief in further support of his motion for a preliminary inunction on January 9, 2024 (Doc. 55).

The Commonwealth Defendants filed a motion to stay discovery pending resolution of their motion to dismiss along with a brief in support of the motion to stay on February 8, 2024. (Docs. 56, 57.) Four (4) days later, the Medical Defendants filed a motion to dismiss Talbert's amended complaint along with a supporting brief. (Docs. 58, 59.) Talbert filed briefs in opposition to the Commonwealth Defendants' motion to stay and the Medical Defendants' motion to dismiss on March 13, 2024, and March 15, 2024, respectively. (Docs. 62, 63.) The Medical Defendants then filed a reply brief in further support of their motion to dismiss on March 28, 2024 (Doc. 64), to which Talbert filed an unauthorized surreply brief on April 15, 2024 (Doc. 65).

On April 26, 2024, Talbert filed another motion for a preliminary injunction, a supporting brief, and a motion to exceed page limitations. (Docs. 66–68.) The Commonwealth Defendants filed a brief in opposition to Talbert's motion for a preliminary injunction on May 10, 2024 (Doc. 69), and Talbert filed a reply brief in further support of his motion on May 29, 2024

(Doc. 70). On July 10, 2024, Talbert filed a motion for recusal and motion to transfer case, along with a supporting brief.

**B.    Allegations, Causes of Action, and requests for relief in the Amended Complaint[3]**

### 1.    Talbert's Underlying Convictions and Sentence

In December 2019, Talbert was sentenced to a period of state incarceration for a minimum of three-and-a-half (3 ½) years to a maximum of seven (7) years in the Court of Common Pleas of Philadelphia County. (Doc. 17 at 3, 18–19); *see also Talbert v. Harry*, No. 22-cv-2011, 2024 WL 3606320, at *1 (E.D. Pa. July 31, 2024) (setting forth Talbert's convictions and sentence). As part of his sentence, the trial judge ordered Talbert to receive "anger management, drug and mental health treatment, [and] job training." (Doc. 17 at 3, 10, 19); *see also Talbert v. Walker*, No. 24-cv-3061, 2024 WL 5098498, at *1 (E.D. Pa. Oct. 9, 2024) (noting that Talbert was "to receive drug, mental health and anger management treatment while incarcerated"), *report and recommendation adopted*, 2024 WL 5096212 (E.D. Pa. Dec. 12, 2024). The trial judge also "recommend[ed]" Talbert be incarcerated at SCI Waymart for mental health and drug treatment." (Doc.

---

[3] Due to Talbert presenting his factual allegations in a scattershot manner, the Court has attempted to sync them together as well as possible.

17 at 19.) Talbert asserts that Defendants "have all been placed on notice, on separate occasions," of the duration of his sentence as well as "mental health treatment, and necessary housing, as conditions of that sentence." (Doc. 17 at 3.)[4]

### 2. Centurion

The Commonwealth, Governor Shapiro, the DOC, and Harry contracted with Centurion to provide mental health services in DOC facilities. (*Id.* at 3.) These Defendants knew, or should have known, that Centurion "has been known, nationwide, to obtain government funding for inmate mental health psychiatric treatment [and] not provid[e] those constitutional and contractual services." (*Id.*) Among other things, Centurion failed to select and retain only competent physicians. (*Id.* at 11.)

---

[4] Contrary to Talbert's allegation, the trial court did not direct the DOC to incarcerate him at SCI Waymart; instead, the trial court "recommend[ed]" that the DOC incarcerate Talbert at SCI Waymart for mental health treatment. (Doc. 17 at 19.) Nor could the trial court direct the DOC to place Talbert in a particular correctional facility or a housing unit therein because, as the Pennsylvania Commonwealth Court has previously explained to Talbert, "while the sentencing court may make recommendations to [the] DOC, [the] DOC has the ultimate authority to determine where and under what conditions an inmate will be housed." *Talbert v. Dep't of Corr.*, No. 125 M.D. 2022, 2023 WL 2579062, at *4 (Pa. Commw. Ct. Mar. 21, 2023) (citations omitted). "Thus, even though the [t]rial [c]ourt recommended that . . . Talbert be housed at SCI[]Waymart for mental health treatment, [the] DOC was not bound by that recommendation." (*Id.*)

- 11 -

Talbert sought treatment from several Centurion-employed "psychiatric physicians," and he explained "the multiple, negative effects of longterm [sic] isolated confinement," which "factor[ed] into him suffering from decompensation," as well as his "not being prescribed mediation and other psychiatric treatment, as was ordered by the court, and to which he received previously before his DOC commitment." (*Id.*) Nevertheless, "on numerous occasions," the Centurion physicians denied Talbert treatment. (*Id.*) In addition, referrals from DOC psychologists to Centurion physicians to evaluate Talbert from reported decompensation were canceled and denied. (*Id.*)

### c.    Alleged Incidents

Talbert avers that he has been diagnosed with the following mental health or behavioral issues: (1) anxiety; (2) post-traumatic stress disorder; (3) attention-deficit hyperactivity disorder; (4) major depression; (5) antisocial personality disorder; (6) borderline personality disorder; (7) paranoia; (8) schizophrenia; (9) suicidal behavior; and (10) impulse control disorder. (*Id.* at 9.) The combination of these issues "substantially impairs [Talbert's] thinking, perception, and behavior." (*Id.*)

On January 13, 2020, Talbert had a "psychotic episode" "while not being treated for his paranoia" during which he assaulted another inmate.

(*Id.* at 10.) This incident caused Talbert to be placed into solitary confinement. (*Id.*) Talbert avers that the DOC "failed to consider [his] mental illness as the moving [sic] factor of []his psychotic behavior at [his] misconduct hearing," which led the "hearing examiner to impose 45 [days] of solitary confinement under disciplinary custody . . . without privileges of phone, electronics, or commissary food." (*Id.*) During those forty-five (45) days, the DOC failed to provide Talbert with his "court-ordered treatment," resulting in Talbert "beg[inning] to decompensate, and allow the effects of total isolation, and extreme restrictions, . . . impair his ability to control his triggered, negative behavior." (*Id.*) When Talbert had this "mental health crisis," instead of the Commonwealth and the DOC treating him, he "was routinely given written misconduct reports for a period of 3½ years." (*Id.*) Talbert was denied, and continues to be denied, "those services because of his mental health disorders' symptoms that substantially impair[] his behavior." (*Id.*)

While Talbert was incarcerated at SCI Phoenix in 2020, Dr. Glushakow placed him in a psychiatric observation cell due to Talbert's "psychotic behavior until [he] became stable." (*Id.* at 4, 20.) In February 2022, Talbert sued Dr. Glushakow in the Court of Common Pleas of Cumberland County. (*Id.* at 4, 21.)

As of 2023, Talbert informed Centurion staff members "of his long-term confinement in isolation causing him to suffer from anxiety, hallucinations, paranoid [sic], the inability to effectively concentrate and think, and [become] reactive and unable to control his impulses." (*Id.* at 4, 22–24.) Then, on June 6, 2023, Talbert sent Governor Shapiro a letter about his complaint in the instant case and his "suffering from untreated mental illness in solitary confinement for 3½ consecutive years." (*Id.* at 4, 25–26.) Talbert believes that Governor Shapiro has not complied with 42 Pa. C.S. §9727(b)(1), which pertains to the "[d]isposition of persons found guilty but mentally ill." (*Id.* at 4); 42 Pa. C.S. §9727. In particular, Talbert avers that Governor Shapiro should "obtain information from the DOC and Harry [regarding] those inmates guilty but mentally ill, and to see if those inmates are receiving the mental health [sic] they were sentenced to receive, since such treatment would be paid for by the State." (*Id.*) In addition to allegedly not complying with Section 9727, Talbert believes that Governor Shapiro has not complied with 42 Pa. C.S. §9764(a)(2) and (3), which require the "sheriff or transporting official" to provide certain documents and records to the correctional institution's records officer. (*Id.* at 5.)

Harry, in her prior role as Superintendent of Pennsylvania State Correctional Institution ("SCI") Camp Hill, was also aware that Talbert was

- 14 -

"on the mental health case load[] and [was in] solitary confinement." (*Id.* at 3.)

Talbert asserts that the Commonwealth and the DOC have established an "unconstitutional practice of discriminating against inmates suffering from serious mental health conditions . . . by allowing their staff members to punish them with longterm [sic] isolated confinement for their mental health sysymptomatic [sic] behavior." (*Id.*) This practice exists despite the United States Department of Justice ("DOJ") issuing a "Findings Letter" on May 31, 2013, to then Governor Thomas Corbett, the Commonwealth, the DOC, and then-DOC Secretary, John Wetzel, in which the DOJ "concluded that they all were responsible for a wide array of policies and practices that were responsible for systematic deficiencies in their treatment of mentally ill prisoners." (*Id.* at 6; Doc. 2.) Due to Governor Shapiro's role as the Commonwealth's Attorney General prior to becoming Governor, Talbert asserts that he had "adequate knowledge of the aforesaid systematic deficiencies, as his office, then, was apprised of this investigation, including various civil matters that were filed against the [Commonwealth] and DOC because of these ongoing deficiencies." (*Id.* at 6.) Yet, Governor Shapiro and Harry have also maintained an unconstitutional practice of "failing to constitutionally and lawfully account for all inmates that suffer from serious

mental health conditions," leading to "various suffering inmates with serious

mental illness being punished, instead of treated, for symptomatic behavior."

(*Id.*) Moreover, they contracted with Centurion, which has contributed to the

"systematic deficiencies in the treatment of mentally disabled inmates." (*Id.*)

Overall, Defendants have established a "system-wide" practice of:

> [S]ecurity staff to consider mental health issues appropriately; a
> fragmented and ineffective mental health care program;
> insufficient mental healthcare staffing to meet the prison
> population's needs; poor screening and diagnostic procedures;
> poor recordkeeping[,] contributing to a dysfunctional system that
> undermines the continuity of care; deficient oversight
> mechanisms including the failure to collect necessary
> information on critical incidents; and, a lack of training in the
> proper response to warning signs by inmates with serious mental
> health conditions.

(*Id.* at 7.)

In June 2023, a psychiatric referral was sent to Centurion for Dr.

Glushakow, who was now a regional psychiatrist, to evaluate Talbert "due to

him feeling suicidal . . . [and] suffering from decompensation from the 3½

consecutive years that he has been in isolated confinement." (*Id.*) However,

due to Talbert's prior Cumberland County lawsuit against Dr. Glushakow and

Centurion, Dr. Glushakow canceled the referral for "no medical reasoning,

which denied [Talbert] access to necessary psychiatric treatment." (*Id.*)

Talbert also avers that on January 19, 2023, June 14, 2023, and July

9, 2023, while he was at SCI Phoenix and SCI Coal Township, he sought

- 16 -

treatment from Centurion only to have Centurion's staff acknowledge Talbert's suffering but refuse to "assess and evaluate him, causing his decompensation, in prolonged isolation, to become worse, and substantially affect his behavior." (*Id.*) Centurion also has a practice of denying Talbert's "treatment and hiring of incompetent psychiatric staff members." (*Id.* at 8.)

Talbert asserts that he "just settled 14 civil cases against the State and DOC, including several state executive agencies and agents, on March 7, 2023, to which some involved his mental illness and him being in long term isolated confinement without treatment." (*Id.*) The Commonwealth, Governor Shapiro, the DOC, and Harry are "all constructively and actually aware of these settlements through [Governor] Shapiro's previous office of Attorney General," which gives "them knowledge that changes need to be made to its defecient [sic] and dysfunctional mental health services." (*Id.*) However, Defendants have been deliberately indifferent to Talbert's court-ordered psychiatric treatment and housing, and they continue to deny him access to services, "possibly in retaliation of those 14 settled lawsuits." (*Id.*)

### 4.    Causes of Action and Requests for Relief

Based on the above factual allegations, Talbert asserts causes of action against: (1) the Commonwealth and the DOC for violating the Rehabilitation Act of 1973 ("RA") and the Americans with Disabilities Act

- 17 -

("ADA"); (2) Centurion for state-law corporate negligence; (3) Dr. Glushakow for deliberate indifference to his serious medical needs in violation of the Eighth Amendment; (4) Dr. Glushakow for retaliation in violation of the First Amendment; (5) Governor Shapiro and Harry for deliberate indifference to his serious medical needs and unlawful conditions of confinement in violation of the Eighth Amendment, as well as supervisory liability. (*Id.* at 9–17.) For relief, Talbert seeks compensatory damages, punitive damages, and unspecified injunctive relief. (*Id.* at 17.)

## II.   LEGAL STANDARDS

### A.   Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa.

2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.   Motion for a Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Council, Inc.*, 555 U.S. 7, 20 (2008). These factors inform a balancing test, but the first two factors—likelihood of success and irreparable harm—are essential. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) ("[W]e have repeated that a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." (citations omitted)). So "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In addition, preliminary injunctions are designed to:

preserve the status quo until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) (quoting *Frank's GMC Truck Center, Inc. v. General Motor Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The facts clearly must support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied. *United States v. Stazola*, 893 F.2d 34, 37 n.3 (3d Cir. 1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989); [*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)] (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages). Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief.

Moreover, because the purpose of preliminary injunctive relief is to prevent irreparable injury pending the resolution of the underlying claims on their merits, "the injury claimed in the motion for preliminary injunctive relief must relate to the conduct alleged and permanent relief sought in the plaintiff's complaint." *James v. Varano*, 2017 WL 895569, at *3 (M.D. Pa. Mar. 7, 2017). In other words, "there must be a connection between the underlying complaint and the relief requested in the motion for a preliminary injunction." *Id.* (citing *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010)). A district court "should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

Finally, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are "in court" . . .'". *Stiel v. Fed. Bureau of Prisons*, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting *Muhammad v. Director of Corrections*, 2009 WL 161075, at *1 (E.D. Ca. Jan. 22, 2009)). Thus, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006); *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

*Talbert v. Irvin*, No. 24-cv-122, 2024 WL 3678875, at *1–2 (W.D. Pa. July 2, 2024), *report and recommendation adopted sub nom.*, *Talbert v. Irwin*, 2024 WL 3677495 (W.D. Pa. Aug. 6, 2024).

Finally, the Prison Litigation Reform Act ("PLRA") imposes certain limitations on district courts when granting temporary restraining orders or preliminary injunctive relief in cases filed by prisoners in which they challenge

their prison conditions. In this regard, the PLRA provides in relevant part as follows:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. §3626(a)(2).

## C.    Motions to Recuse

There are two federal statutes pertaining to recusal, 28 U.S.C. §§144 and 455. Although Talbert has not identified whether he is proceeding under either, or both, statutes, the Court will discuss only Section 455 because Talbert has not taken appropriate actions to invoke Section 144 here.[5]

---

[5] Section 144 states that

[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge

*(footnote continued on next page)*

- 22 -

Section 455 governs:

disqualification based on the appearance of impropriety or actual bias. Under 28 U.S.C. §455(a), a judge "shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." 28 U.S.C. §455(a). The test for disqualification under this provision is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.,* 368 F.3d 289, 301 (3d Cir. 2004). The standard is objective; "[t]he judge does not have to be subjectively biased or prejudiced, so long as he appears to be so." *United States v. Ciavarella,* 716 F.3d 705, 718 (3d Cir. 2013) (quoting *Liteky v. United States,* 510 U.S. 540, 553 n.2, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality."). Under 28 U.S.C. §455(b)(1), recusal is required where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §455(b)(1).

---

shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. §144. As demonstrated by the language in Section 144, a motion to recuse under this section is initiated upon a party filing of an affidavit. *See id.* Talbert has not filed an affidavit, and his motion is untimely insofar as he did not file it within ten (10) days of the assignment of this matter to the undersigned or state good cause for his failure to file it within ten (10) days.

> Unlike the analysis under 28 U.S.C. §144, "when deciding a motion for recusal under Section 455(a) [or Section 455(b)], the court need not accept the Movant's allegations as true." *Cooney* [*v. Booth*, 262 F. Supp. 2d 494, 504 (E.D. Pa. 2003)] (collecting cases); *see also United States v. Sciarra*, 851 F.2d 621, 625 n.12 (3d Cir. 1988) (noting the "considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. §455 may be scrutinized by the court deciding the motion for recusal"); 13D Charles Alan Wright et al., Federal Practice & Procedure §3550 (3d ed. 2023 update) ("If a party does move for disqualification under §455, and the motion is supported by an affidavit, . . . the court is not required to accept the factual statements as true."). Rather, the judge is permitted to contradict the factual allegations made in the movant's affidavit based on [their] own knowledge and the record. *Cooney*, 262 F. Supp. 2d at 504 (citing *Mass. Sch. of Law at Andover, Inc.*, 872 F. Supp. at 1349).

*United States v. Gedeon*, No. 21-cr-210, 2023 WL 3097651, at *1–2 (E.D. Pa. Apr. 26, 2023) (all alterations except second-to-last alteration in original).

## III.   DISCUSSION

### A.   Motion to Recuse and Transfer Action to the Western District

Talbert moves to have the undersigned recuse himself[6] from this case or transfer it to the Western District. (Docs. 72–73.) Talbert indicates that he has "filed numerous complaints of judicial misconduct against [the undersigned] with the Office of the Circuit Executive," one of which is on review with the "Judicial Council" after it was denied. (Doc. 72 at 1.) He has

---

[6] Talbert repeatedly refers to the undersigned with feminine pronouns.

also filed motions for preliminary injunctions which have not been scheduled for hearings or otherwise resolved, which causes him to "unreasonably suffer without [the undersigned] properly revising his conditions of confinement and providing timely relief." (*Id.*; Doc. 73 at 1.) Talbert believes that "[i]t is effectively impossible to deem [the undersigned] a fair and impartial Judge with judicial complaints filed against her [sic]," the existence of a "running, bitter controversy between [the undersigned] and [Talbert]." (Docs. 72 at 1; 73 at 2 (citing *Commonwealth v. Debose*, 833 A.2d 147 (Pa. Super. Ct. 2003); *Commonwealth v. Perry*, 364 A.2d 312 (Pa. 1976); *Williams v. Pennsylvania*, 579 U.S. 1 (2016); *Taylor v. Hayes*, 418 U.S. 488 (1974)).

Talbert's motion to recuse will be denied for three (3) reasons. First, none of Talbert's case citations are applicable here. His citations to Pennsylvania state-court cases have no bearing on this Court's analysis under Section 455, and none of his cases involved circumstances remotely like those in this case. For instance, two (2) of the cases addressed issues about, *inter alia*, whether a trial judge should have recused themselves after holding someone in contempt of court, which has not happened here. *See Taylor*, 418 U.S. at 501 (concluding that respondent judge should not preside over retrial of petitioner judge held in contempt because, after "examin[ing] the record in this case, . . . it appears to us that respondent [became]

- 25 -

embroiled in a running controversy with petitioner" and "as the trial progressed, there was a mounting display of an unfavorable personal attitude toward petitioner, his ability, and his motives, sufficiently so that the contempt issue should have been finally adjudicated by another judge"); *Debose*, 833 A.2d 150 ("Finally, we address appellant's argument [that the trial judge] abused her discretion by failing to recuse after previously having found appellant guilty of the contempt charges and subsequently vacating the convictions."). The third case involved whether a Pennsylvania Supreme Court Justice should have recused himself from participating in an inmate's appeal from a death sentence when the Justice previously served as the district attorney who approved seeking the death penalty against the inmate. *See Williams*, 579 U.S. at 3. The fourth, and final case, involved an issue about whether a trial judge should have recused after they were "a mourner at the funeral of the deceased in the case." *Perry*, 364 A.2d at 317. Again, none of those circumstances are present here. Moreover, Talbert identifies no facts evidencing a "running, bitter controversy" between him and the undersigned, nor could he, because none exists.

Second, the fact that Talbert filed a judicial conduct complaint against the undersigned and appealed from the denial of said complaint is not a basis for recusal. "The mere filing of a complaint of judicial misconduct is not

grounds for recusal" because "it would be detrimental to the judicial system if a judge had to disqualify [themselves] anytime someone filed a complaint about [their] conduct. A party would only have to file a complaint to get a different judge." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1265 (11th Cir. 2009); *see also In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005) ("[A] per se rule of disqualification would allow litigants to judge shop by filing a suit against the presiding judge."); *United States v. Martin-Trigona*, 759 F.2d 1017, 1020–21 (2d Cir. 1985) (concluding that litigant cannot force a judge's recusal merely by filing a complaint or lawsuit against that judge); *United States v. Moskovits*, No. 87-cr-284-1, 1994 WL 583179, at *5 (E.D. Pa. Oct. 26, 1994) ("If the simple act of filing a complaint, even one which would later prove meritless, would necessitate the recusal of the judge who was the subject of the complaint, litigants would have free reign to wantonly require the recusal of judges at will."). Therefore, Talbert's filing of a judicial misconduct complaint does not warrant recusal.

Third, to the extent that Talbert bases his motion on delays in resolving his motions in this action, this also is not a ground for recusal. "[T]he manner in which a court controls its docket is discretionary." *Conklin v. Kane*, No. 13-cv-3058, 2014 WL 4411593, at *3 (M.D. Pa. Sept. 5, 2014) (citing *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982)), *aff'd*, 634 F. App'x

69 (3d Cir. 2015) (unpublished). Therefore, a litigant's "allegations of inexcusable delay . . . provide no grounds for recusal." *Id.*; *see also Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 329 (3d Cir. 2015) (denying litigant's request to reassign case to different district judge on remand due to, *inter alia*, district judge's delay in ruling on a motion for preliminary relief because "[w]e have never held that delay alone merits reassignment"); *Qualls v. United States*, Nos. 07-cr-14, 09-cr-418, 2018 WL 1513625, at *2 (E.D.N.Y. Mar. 27, 2018) ("Delays in entering judgment or rendering a decision are not bases for recusal."); *Klayman v. Jud. Watch, Inc.*, 278 F. Supp. 3d 252, 262 (D.D.C. 2017) (denying motion to recuse based on perceived delay in ruling on motion to dismiss); *Baldyga v. United States*, 337 F. Supp. 2d 264, 270 (D. Mass. 2004) (denying motion for recusal premises on delay in ruling on pending motion because such a delay is not a ground for recusal under any statute or case law); *United States v. LaMorte*, 940 F. Supp. 572, 577 (S.D.N.Y. 1996) (45-month delay in resolving motion did not warrant recusal), *aff'd sub nom. United States v. Moritz*, 112 F.3d 506 (2d Cir. 1997). Furthermore, Talbert does not argue that any delay was limited to his case so as to raise a possible suggestion of bias or partiality, and he has not explained how any delays demonstrate bias on the part of the undersigned. *See Wereko v. Rosen*, No. 22-cv-2177, 2022

WL 16573746, at *3 (N.D. Ill. Nov. 1, 2022) (denying motion to recuse due to plaintiff's "perceived lack of progress of the case since its filing [as] suggest[ing] bias on the part of [the district judge]" in part because "delays are inherent in litigation"). Instead, he posits a conclusory and unsupported assertion that the undersigned is biased against him because of a "running, bitter controversy" that exists only in his own mind. As such, a reasonable person, with knowledge of all the facts in this case, would not conclude that the undersigned's impartiality might reasonably be questioned. Accordingly, the Court will deny Talbert's motion to recuse or transfer this case to the Western District.

### B.    Talbert's Motion for a Default Judgment

On December 8, 2023, Talbert filed a document that he titled as "Plaintiff's motion for Default Judgment." (Doc. 47.) Despite this title, this document was a combined request for the Clerk of Court to enter default against Dr. Glushakow and Centurion pursuant to Federal Rule of Civil Procedure 55(a) and grant judgment in Talbert's favor. (*Id.*) The Court will direct the Clerk of Court not to enter default in Talbert's favor and will deny the motion for a default judgment.

Rule 55, which governs the process for default judgments, has two (2) steps. First, a plaintiff must request that the Clerk of Court enter default

against a nonresponding defendant. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024) ("Rule 55 provides a two-step process for default judgment. Step one is entry of default under Rule 55(a) . . . ."). Once the Clerk of Court enters default, unless "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the plaintiff may proceed to the second step, and "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1), (2).

As stated above, the Court will direct the Clerk of Court to deny entering default against Dr. Glushakow and Centurion because Talbert's request for entry of default is deficient. In the Order issued directing the Clerk of Court to send copies of Talbert's amended complaint and waiver of service forms to Defendants, Talbert was directed to "correct [the] deficiency" if "service is unable to be completed due to [his] failure to . . . provide an accurate mailing address." (Doc. 23 at 1.) The envelopes containing copies of the amended complaint and waiver of service forms sent to Dr. Glushakow and Centurion were returned as undeliverable. (Docs. 27, 30.) At that point, it was incumbent upon Talbert to "correct this deficiency." (Doc. 23 at 1.)

- 30 -

Instead, Talbert took no action to serve Dr. Glushakow and Centurion thereafter, such as requesting the Clerk of Court to issue summonses for those Defendants.[7] Since Talbert did not show that Dr. Glushakow and Centurion were properly served with his amended complaint in accordance with the Federal Rules of Civil Procedure, they could not have been in default at the time Talbert requested that the Clerk of Court enter default against them.

The Court also notes that Talbert represented in his request for entry of default that "Centurion and [Dr.] Glushakow . . . acted in bad faith by willfully failing to enter an appearance, waive service, and file a responsive pleading." (Doc. 47 at 1.) Talbert has not supported these assertions with any evidence, and he is the individual who failed to serve them with his amended complaint. Therefore, any entry of default against Dr. Glushakow or Centurion would be improper and unjustified.

---

[7] Talbert was not entitled to an order directing that the United States Marshals serve summonses and his amended complaint on Dr. Glushakow and Centurion because he is not proceeding *in forma pauperis* in this action. *See* Fed. R. Civ. P. 4(c)(3) (providing that "[t]he court must [order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court] if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915"). Therefore, it was incumbent upon him, and not the Court, to take appropriate steps to ensure that Dr. Glushakow and Centurion were timely served with his amended complaint.

- 31 -

As for Talbert's motion for a default judgment, he is not entitled to a default judgment because default has not yet been entered (and will not be entered at this time) against Dr. Glushakow and Centurion. Accordingly, the Court will deny Talbert's motion for a default judgment as well.

**C.    Talbert's Motion for Summary Judgment and the Commonwealth Defendants' Motion for an Extension of Time to File a Response to the Motion for Summary Judgment**

Almost three (3) weeks after the Commonwealth Defendants filed their motion to dismiss in this case, and before the Medical Defendants had counsel enter appearances on their behalf, Talbert filed a motion for summary judgment and a supporting brief. (Docs. 36, 37.) Two (2) days later, the Commonwealth Defendants filed a motion seeking an extension of time to file a response to Talbert's motion for summary judgment until after the Court resolves their motion to dismiss (Doc. 39.) The Court will deny without prejudice Talbert's motion for summary judgment because it is premature and will deny as moot the Commonwealth Defendants' motion for an extension of time.

As indicated above, Talbert filed his motion for summary judgment before Defendants filed a responsive pleading in the case. Regarding motions for summary judgment filed in the pleadings phase of a case, the Court notes that:

Federal Rule of Civil Procedure 56 provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." [Fed. R. Civ. P. 56(b).] Analyzing the text of Rule 56, it is clear that "[n]othing precludes either party from moving for summary judgment before the defendant answers the complaint." [Rule 56. Summary Judgment, 2 Federal Rules of Civil Procedure, Rules and Commentary (Feb. 2021).] That said, "[w]hether a motion is appropriate so early in the case depends on the circumstances." [*Id.*] The advisory committee instructs that "[a]lthough the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases, the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." [Fed. R. Civ. P. 56 advisory committee's notes (2010); *see also* Rule 56. Summary Judgment, 2 Federal Rules of Civil Procedure, Rules and Commentary (Feb. 2021) ("It generally does not make sense for the court to act on plaintiff motions filed before the defendant answers. In most cases, it is preferable to wait and see whether the defendant is opposing the complaint and on what basis.").] The decision of whether to consider or dismiss as premature a plaintiff's motion for summary judgment filed before a defendant's answer is left to the sound discretion of the District Court. [*See* Fed. R. Civ. P. 56 advisory committee's notes (2010) ("Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case."); *see also Ferreiras v. York County, Pennsylvania*, No. 04-cv-1799, 2006 WL 1967365, at *2 (July 12, 2006) ("[T]he district court is empowered with discretion to decide whether the movant's motion [for summary judgment] is ripe.").]

*Kendall v. EQT AMD LLC*, No. 21-cv-1491, 2021 WL 5866597, at *1 (M.D.

Pa. Dec. 10, 2021) (internal footnotes omitted) (all alterations other than

insertions of citations in original).

Here, Talbert's motion for summary judgment is premature because he

filed it prior to the Medical Defendants being served, during the briefing

period for the Commonwealth Defendants' motion to dismiss, prior to any

Defendant filing a responsive pleading, and prior to discovery. Under these

circumstances, the Court

> must first assess the merits of . . . Defendants' motion[s] to
> dismiss. If the motion[s are] denied (at least in part), the Court
> will then instruct . . . Defendants to file their responsive pleadings
> in the form of an Answer. [*See* Fed. R. Civ. P. 7(a), 12(a)(4).] At
> that point, [Talbert] may elect to seek judicial resolution of certain
> or all facets of the case, either in the form of a Rule 56 motion for
> summary judgment or a Rule 12(c) motion for judgment on the
> pleadings.
>
> There is an order to these things. [Talbert's] attempt to bypass
> that order with "[a] premature motion for summary judgment is
> unhelpful to both the parties and the Court." [*Sam Mannino
> Enters., Inc. v. CIT Railcar Funding Co., LLC*, No. 19-cv-2075,
> 2021 WL 2376662, at *2 (M.D. Pa. June 10, 2021).]

*Kendall*, 2021 WL 5866597, at *1 (internal footnotes omitted) (all alterations

other than insertions of citations in original). Therefore, the Court will deny

without prejudice Talbert's motion for summary judgment and deny as moot

the Commonwealth Defendants' motion for an extension of time because

they need not file any response to Talbert's motion.

### D.   Talbert's Motions for Preliminary Injunctive Relief

#### 1.   Talbert's "Motion to Renew Motion for Preliminary Injunction and Temporary Restraining Order"

On September 11, 2023, Talbert moved to have the Court issue an

"order setting a date at its earliest convenience for his filed Motion for

Preliminary Injunction and Temporary Restraining Order (E[CF] No. 18)."
(Doc. 26 at 1.) The Court will deem this motion withdrawn due to Talbert's
failure to file a brief in support of the motion in accordance with the Court's
Local Rules. *See* M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing
of any motion, the party filing the motion shall file a brief in support of the
motion. . . . If a supporting brief is not filed within the time provided in this
rule the motion shall be deemed to be withdrawn."). Even if the Court did not
deem this motion withdrawn, the Court would deny it because Judge
Kearney denied Talbert's motion for a preliminary injunction and temporary
restraining order, *see* (Doc. 19), so there was no motion upon which to set a
date for a hearing.

### 2.    Talbert's December 4, 2023 Motion for a Preliminary Injunction

Talbert filed a motion for a preliminary injunction and a supporting brief
on December 4, 2023. (Docs. 45, 46.) The Court will deny this motion as
moot due to Talbert's filing another motion for a preliminary injunction with a
supporting brief on April 26, 2024. (Docs. 66, 67.); *see, e.g., Casey v. Dixon*,
No. 22-cv-69, 2022 WL 4370451, at *2 (N.D. Fla. Sept. 8, 2022) (denying
plaintiff's second motion for a preliminary injunction as moot in light of
plaintiff's filing of a third motion for a preliminary injunction), *report and*

*recommendation adopted and modified on other grounds sub nom.*, *Casey v. Proctor*, 2022 WL 4369979 (N.D. Fla. Sept. 21, 2022).

Even if the Court was not denying this motion as moot, it would be denied on its merits. In this motion, Talbert seeks an injunction to stop "Defendants and those acting in participation and concert with them from: (i) depriving [him] the treatment and housing ordered and imposed by the sentencing court[;] and (ii) depriving [him] the same privileges that other inmates receive in long-term Administrative Custody and/or General Population." (Doc. 46 at 7.) As evidenced by these requests, Talbert is not seeking to merely preserve the status quo. Rather, he is seeking to have this Court order Defendants to alter the status quo, which is a mandatory preliminary injunction. *See Mandatory Injunction*, Black's Law Dictionary (12th ed. 2024) (defining a "mandatory injunction" as "[a]n injunction that compels a party to do some act or mandates a specified course of conduct" and noting that "[c]ourts are typically more reluctant to grant a mandatory injunction than a prohibitory one"). "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994).

Talbert fails to satisfy his "heavy burden" to demonstrate the necessity of his requested injunctive relief. Even if the Court presumed that Talbert demonstrated a reasonable likelihood of success on the merits of his claims in the amended complaint, he has not shown irreparable harm. "[A]n injunction cannot issue to simply eliminate the possibility of a future denigration in [a prisoner-plaintiff's] mental health or as a redress for past harms." *Thomas v. Little*, No. 22-cv-2246, 2024 WL 3295584, at *6 (E.D. Pa. July 3, 2024). Talbert presents no plausible argument or evidence that he is in an "imminent emergency that would necessitate this extraordinary form of relief." *Id.*[8] Because Talbert does not satisfy the irreparable-harm factor for issuance of a preliminary injunction, the Court will not evaluate the remaining factors, and will deny his motion for a preliminary injunction.

---

[8] It is unclear that Talbert remains in any RHU to date. He has, since the filing of this motion for a preliminary injunction, been transferred from Pennsylvania State Correctional Institution Forest ("SCI Forest") to SCI Phoenix via a notice submitted on February 27, 2024 (Doc. 60). Then from SCI Phoenix back to SCI Forest via a notice submitted on March 12, 2024 (Doc. 61). Then again from SCI Forest to SCI Phoenix via a notice submitted on July 1, 2024 (Doc. 71). And finally, from SCI Phoenix to Pennsylvania State Correctional Institution Fayette via a notice submitted on July 22, 2024 (Doc. 74). *See Miller v. Hartwell*, 834 F. App'x 692, 694 (3d Cir. 2020) ("Because [plaintiff] has been transferred from the facility at which the named defendants oversaw his medical care, he can demonstrate neither likelihood of success on the merits of his claim for prospective injunctive relief nor irreparable injury from the denial of preliminary injunctive relief, and therefore both are equally moot.").

### 3. Talbert's April 26, 2024 Motion for a Preliminary Injunction

In Talbert's motion for a preliminary injunction and supporting brief docketed on April 26, 2024,[9] he seeks a preliminary injunction:

1. [E]njoining Defendants from using Disciplinary Segregation beyond 30 days as a punishment, and alternatively place inmates under long-term administrative segregation upon their 30th day.

2. [E]njoining Defendants from using Disciplinary Segregation as a means to punish inmates for their mental health behavior, and alternatively place them in 24 hour [sic] psychiatric observation cells until their behavior becomes stable.

3. [C]ease the practice of Disciplinary Segregation altogether and just use Administrative Segregation as a means to punish.

(Doc. 67 at 15–16.) As with his prior motion for a preliminary injunction, Talbert is seeking a mandatory preliminary injunction and, thus, has a heavy burden to satisfy to obtain his requested relief. Talbert again has failed to satisfy that burden. In addition, this motion presents two other bases upon which to deny him relief.

Talbert once again fails to demonstrate that he will suffer irreparable harm without injunctive relief for the same reasons discussed above.

---

[9] Talbert filed a motion for leave to exceed the page limitations under the Local Rules for his supporting brief. (Doc. 68.) The Court will grant this motion.

- 38 -

Additionally, Talbert lacks standing under Article III of the United States Constitution to obtain his first two (2) requested forms of injunctive relief insofar as he is seeking relief on behalf of other inmates. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) ("Courts have held consistently that an inmate does not have standing to sue on behalf of [their] fellow prisoners."). In this regard, "a plaintiff must assert his or her own legal interests rather than those of a third party [to have standing to bring a claim]." *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2001); *see Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) ("In the ordinary course, a litigant . . . cannot rest a claim to relief on the legal rights or interests of third parties.").

Finally, Talbert's third form of requested preliminary injunctive relief exceeds his allegations in the amended complaint. There are neither legal claims nor factual allegations in the amended complaint that would warrant Talbert's requested change to how the DOC disciplines all inmates. Instead, his amended complaint generally involves, *inter alia*, the lack of appropriate mental health treatment for his behavioral issues that he has received. *See generally* (Doc. 17 at 1–17). A party cannot demonstrate a likelihood of success on the merits when their request for injunctive relief has no relation to the operative complaint. *See Moneyham v. Ebbert*, 723 F. App'x 89, 92

- 39 -

(3d Cir. 2018) (unpublished) ("The District Court was correct to deny this requested injunction because it involved allegations unrelated to the complaint"). Accordingly, for all the above reasons, the Court will deny this motion for a preliminary injunction.

## IV.   CONCLUSION

For the reasons set forth above, the Court will (1) deem the first of Talbert's motions for a preliminary injunction withdrawn due to his failure to file a brief in support of the motion in accordance with the Local Rules, (2) deny his other two (2) motions for a preliminary injunction, (3) deny without prejudice his motion for summary judgment as premature, (4) deny his motion for a default judgment and direct the Clerk of Court not to enter default against Dr. Glushakow and Centurion, (5) grant Talbert's motion to exceed the page limitations for his brief in support of his motion for recusal, (6) deny Talbert's motion for recusal or to transfer of this action to the Western District, and (7) deny as moot Defendants' motion for an extension of time to file a response to Talbert's motion for summary judgment. Although not referenced above, the Court will also grant Defendants' motion to stay

discovery pending resolution of their motion to dismiss.[10] An appropriate

Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 31, 2025**
23-1338-01

---

[10] The Court will address Defendants separately filed motions to dismiss the amended complaint (Docs. 34, 58) via a separate Memorandum and Order. Nevertheless, the Court will grant this motion to stay discovery pending resolution of those motions.